IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL PECENA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-11-CV-2325-BD |
| | § | |
| JOEL MARTIN, ET AL. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Joel Martin, David Valencia, Mark Bradford, and Evan Hook, all of whom are Mesquite police officers, have filed a renewed Rule 12(b)(6) motion to dismiss this civil rights action brought by plaintiff, a fellow police officer, arising out of his arrest for DWI. For the reasons stated herein, the motion is granted.

I.

On September 18, 2009, as plaintiff was driving to work for an early morning shift at the Mesquite police station, a concerned citizen called 911 to report his erratic driving. (*See* Plf. Compl. at 2-4, ¶¶ 6, 8, 11-12). The dispatcher notified Lieutenant Doug Yates of the call and informed him that plaintiff was the driver of the vehicle in question. (*See id.* at 4, ¶ 12). Once plaintiff arrived at the station, he felt dizzy and weak, experienced blurred vision, and had difficulty walking and speaking. (*See id.* at 4, ¶ 13). After his knees buckled, plaintiff was led to a chair where he drank a Coke and ate a sweet roll. (*See id.*). He was later examined by paramedics. (Def. Ans. at 6-7, ¶¶ 40-41; Plf. Rule 7(a) Repl. at 9, ¶ 43).

Shortly after plaintiff arrived at the police station, Yates advised his supervisor, Captain David Valencia, of the situation. (*See* Plf. Compl. at 4, ¶¶ 14-15). Valencia then spoke to Assistant Chief Joel Martin, who instructed him to gather additional information from several officers. (*See id.* at 4, ¶ 15). Through these conversations, Martin and Valencia became aware of the citizen's report of erratic driving, as well as the fact that plaintiff had exhibited slow and "unnaturally deliberate" speech, was "lethargic with a glassy blank stare," and was unable to walk normally. (Def. Ans. at 5-7, ¶¶ 40-41; Plf. Rule 7(a) Repl. at 3-4, ¶¶ 40-41; *see also* Plf. Compl. at 4, ¶ 15). Martin and Valencia also learned that plaintiff was taking Ambien, a prescription sleep medication that can cause impairments similar to those experienced by plaintiff. (*See* Def. Ans. at 6-7, ¶¶ 40-41; Plf. Rule 7(a) Repl. at 3-4, ¶¶ 40-41). Based on this information, Martin and Valencia directed Officers Mark Bradford and Evan Hook to arrest plaintiff for DWI. (*See* Plf. Compl. at 4-5, ¶16). Plaintiff was taken into custody, fingerprinted, and photographed. (*Id.* at 5, ¶ 19). His arrest was reported to state law enforcement agencies and was covered by several media outlets. (*Id.*).

Following his arrest, plaintiff was given three field sobriety tests and his car was searched for illegal or non-prescription drugs. (*See id.* at 5-6, ¶¶ 17-18, 21). Although Hook noted in the arrest report that plaintiff showed "zero clues" of intoxication during the field sobriety tests and no illegal substances were found in his car, (*see id.* at 6, ¶ 21 & Plf. Rule 7(a) Repl. at 9, ¶ 43), a Mesquite police lieutenant signed a probable cause affidavit and asked a municipal judge to issue an arrest warrant. (*See* Plf. Compl. at 6, ¶¶ 22-23). The judge declined to issue the warrant due to the absence of probable cause. (*Id.* at 6, ¶ 23). One week later, the results of a blood test confirmed that plaintiff had not been intoxicated. (*See id.* at 6, ¶ 24). Despite the lack of evidence against plaintiff, the Mesquite Police Department presented the DWI case to the Dallas County District Attorney. (*See id.* at 7, ¶ 25). Prosecutors rejected the case because "erratic driving alone is not

sufficient to establish evidence of intoxication . . . the field sobriety evaluations and the blood testing clearly establishes insufficient evidence of intoxication." (*See* Plf. Compl. at 7, ¶ 26).

Nearly two years later, plaintiff sued defendants in Texas state court for false arrest and conspiracy under 42 U.S.C. § 1983, and for malicious prosecution and intentional infliction of emotional distress. Defendants timely removed the case to federal court, answered the complaint, and filed a Rule 12(b)(6) motion to dismiss based on qualified immunity. The court denied the motion to dismiss, but ordered plaintiff to specifically address the immunity defense in a Rule 7(a) reply.[1] After plaintiff filed his Rule 7(a) reply, defendants renewed their motion to dismiss. The motion has been fully briefed by the parties and is ripe for determination.

II.

Although defendants seek dismissal under Rule 12(b)(6), such a motion is untimely because defendants have already answered the complaint. *See* FED. R. CIV. P. 12(b) (motion seeking dismissal for failure to state a claim "must be made before pleading if a responsive pleading is allowed"). The court therefore treats the motion as a Rule 12(c) motion for judgment on the pleadings. *See Gill v. Devlin*, --- F.Supp.2d ---, 2012 WL 2152832 at *2 (N.D. Tex. Mar. 12, 2012) (citing cases) (treating post-answer Rule 12(b)(6) motion as Rule 12(c) motion).

A Rule 12(c) motion is governed by the same standards that apply to a Rule 12(b)(6) motion to dismiss. *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). A district court may dismiss a complaint for failure to state a claim "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Jackson v. City of Beaumont Police Dept.*, 958 F.2d 616, 618 (5th Cir. 1992), *quoting Barrientos v. Reliance*

---

[1] The Fifth Circuit has held that a Rule 7(a) reply is the "preferred procedure" prior to considering a motion to dismiss on grounds of qualified immunity. *See Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995).

*Standard Life Ins. Co.*, 911 F.2d 1115, 1116 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 795 (1991). To survive dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.*, 127 S.Ct. at 1965. Where, as here, a defendant seeks dismissal based on qualified immunity, the complaint is subject to a heightened pleading requirement. That is, the plaintiff "must allege particularized facts which, if proved, would defeat a qualified immunity defense." *Baca v. Joshi*, No. 3-07-CV-2031-G, 2008 WL 4369767 at *2 (N.D. Tex. Sept. 24, 2008), *citing Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989); *see also Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). However, conclusory allegations and assertions will not suffice. *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

A.

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport*, 390 Fed. Appx. 379, 383, 2010 WL 3190709 at *3 (5th Cir. Aug. 12, 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-step analysis to determine whether a police officer is entitled to qualified immunity. First, the court must decide whether plaintiff has alleged a constitutional violation under current law. *See Pearson*, 129 S.Ct. at 815-16. Second, the court must determine whether the defendants' actions were objectively

unreasonable in light of clearly established law at the time of the incident. *Id.*; *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.

B.

Judged against these standards, the court determines that plaintiff has not pled sufficient facts in his complaint or Rule 7(a) reply to satisfy the second prong of the qualified immunity analysis -- that defendants' actions were objectively unreasonable. To overcome the defense of qualified immunity in a false arrest case, a plaintiff "must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrest[ ]." *Hilton*, 568 F.3d at 207 (citing cases). If the pleadings establish that defendants "*could* reasonably have believed" that they had probable cause to arrest plaintiff in light of clearly established law at the time, they are protected by qualified immunity. *See Massey v. Wharton*, No. 11-60693, 2012 WL 2004968 at *3 (5th Cir. Jun. 5, 2012) (emphasis added). This protection applies even where the probable cause assessment is mistaken or other reasonably competent individuals could disagree with it. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 760 (2001) (citing cases).

1.

Probable cause "exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir.), *cert. denied*, 131 S.Ct. 507 (2010), *quoting Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). In assessing probable cause, a court must give deference to the inferences and

deductions of a trained police officer. *See United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003). The arresting officer must conduct a reasonable investigation and "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir.), *cert. denied*, 109 S.Ct. 135 (1988); *Barfield v. Louisiana*, 325 Fed. Appx. 292, 294, 2009 WL 903301 at *2 (5th Cir. Apr. 3, 2009). However, the officer need not perform a "perfect investigation that uncovers all readily available exculpatory evidence." *Barfield*, 2009 WL 903301 at *4; *see also Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), *quoting Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977) (law does not require "that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person"). Under the "collective knowledge doctrine," a police officer "may rely on information supplied by other officers that indicates that an offense has occurred." *United States v. Luckey*, 402 Fed. Appx. 889, 889-90, 2010 WL 4683697 at *1 (5th Cir. Nov. 18, 2010), *cert. denied*, 131 S.Ct. 1714 (2011), *citing United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999). These forgiving standards make it difficult for a plaintiff to disturb an officer's entitlement to qualified immunity based on probable cause. *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001).

2.

Whether probable cause existed at the time of plaintiff's arrest depends on the elements of DWI. Under Texas law, a person commits the offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." *See* TEX. PEN. CODE ANN. § 49.04(a) (Vernon 2003). "Intoxicated" is defined as, *inter alia*:

> not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body[.]

*See id.* § 49.01(2)(A). Plaintiff does not dispute that he was operating a motor vehicle in a public place immediately prior to his arrest. (*See* Plf. Resp. Br. at 8; *see also* Plf. Compl. at 3-4, ¶¶ 10-12). Instead, he argues that there was no probable cause to arrest him for DWI because defendants lacked sufficient reason to conclude that he was, in fact, "intoxicated." (*See* Plf. Resp. Br. at 8; Plf. Compl. at 7-9, ¶¶ 30-31 & 35). The court disagrees. Even when viewed in the light most favorable to plaintiff, the facts alleged in the pleadings show that a reasonable police officer could have concluded that plaintiff did not have normal use of his mental or physical faculties by reason of the introduction of Ambien, a drug. Before making the decision to arrest plaintiff, both Martin and Valencia knew:

- that a concerned citizen called 911 to report plaintiff's erratic driving;

- that plaintiff exhibited slow speech, motor deficits, a glassy-eyed appearance, and a sluggish demeanor upon his arrival at the police station; and

- that plaintiff was taking Ambien.

(*See* Plf. Compl. at 3-4, ¶¶ 11-13, 15; Def. Ans. at 5-7, ¶¶ 40-41; Plf. Rule 7(a) Repl. at 3-4, ¶¶ 40-41 & 9, ¶ 43). Martin and Valencia were also aware from experience that Ambien could cause impairments similar to those exhibited by plaintiff. (*See* Def. Ans. at 6-7, ¶¶ 40-41). In view of these facts, none of which are contested by plaintiff, a reasonable police officer could reasonably have believed that plaintiff was intoxicated. *See Krueger v. Bell*, No. 8-04-CV-142T-MAP, 2005 WL 2877467 at *3 & n.10 (M.D. Fla. Nov. 2, 2005) (probable cause existed to arrest plaintiff for DWI where officer knew that plaintiff had driven in the wrong direction, slurred her speech, had half-closed eyes, was easily distracted, answered questions inconsistently, swayed when exiting her vehicle, performed poorly on field sobriety tests, and admitted to taking medication that could cause

such impairments). For their parts, Bradford and Hook were entitled to rely on the assessment of probable cause provided by their supervisors in carrying out orders to arrest plaintiff. *See United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007) ("Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts.").

In an attempt to show that the actions of defendants were objectively unreasonable, plaintiff points out that: (1) Bradford and Hook did not mention alcohol or drugs in their arrest report; (2) Valencia never directly contacted or communicated with him; (3) other police officers and a municipal judge believed that probable cause was lacking; (4) three field sobriety tests showed that he was not intoxicated; and (5) a police search of his car uncovered no illegal or non-prescription drugs. (*See* Plf. Resp. Br. at 8-12). None of those facts are sufficient to overcome the defense of qualified immunity. That Bradford and Hook did not mention drugs or alcohol in the arrest report has no bearing on whether they "could reasonably have believed" that probable cause existed to arrest plaintiff for DWI. *See Massey*, 2012 WL 2004968 at *3. Valencia was entitled to make a probable cause determination without interacting with plaintiff based on information provided by other officers. *See Luckey*, 2010 WL 4683697 at *1. And, the fact that some police officers and a judge believed that probable cause was lacking does not mean that defendants acted unreasonably in concluding otherwise. *See Mendenhall*, 213 F.3d at 230. With respect to the field sobriety tests and the search of plaintiff's car, the court notes that the tests were administered and the car searched *after* plaintiff was arrested. Thus, those facts are irrelevant to the initial probable cause determination.

Plaintiff also faults defendants for failing to investigate whether his symptoms were caused by a diabetic reaction. (*See* Plf. Resp. Br. at 10). Not only did plaintiff fail to mention to anyone involved that he suffered from diabetes, but the impairments he exhibited at the police station were also consistent with intoxication. Based on the totality of the facts and circumstances available to them at the time, defendants could reasonably have believed that plaintiff's condition was caused by the ingestion of Ambien -- not some underlying medical condition. *See Barfield*, 2009 WL 903301 at *4 (investigation need not be perfect or all-encompassing to be reasonable); *Krueger*, 2005 WL 2877467 at *3 (even where plaintiff told arresting officer that she was an epileptic, officer had probable cause to arrest plaintiff for DUI without investigating epilepsy claim as her physical condition was also consistent with intoxication).

In sum, defendants are entitled to qualified immunity with respect to plaintiff's section 1983 false arrest claim because they had "arguable probable cause" to arrest him for DWI. The same is true for plaintiff's conspiracy claim. *See Hill v. City of Seven Points*, 31 Fed. Appx. 835, 835, 2002 WL 243261 at *8 (5th Cir. Jan. 17, 2002), *citing Hale v. Townley*, 45 F.3d 914, 920-21 (5th Cir. 1995) (where all defendants were entitled to qualified immunity from the underlying section 1983 claims, "the conspiracy claim [was] not actionable"). These federal claims will be dismissed with prejudice.

C.

A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3); *see also Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Among the factors to be considered in exercising this discretion are judicial economy, convenience, fairness, federalism, and comity. *See Rosado v. Wyman*, 397 U.S. 397, 403-04, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970). When all federal

claims are dismissed prior to trial, these factors weigh heavily in favor of declining to exercise jurisdiction. *See Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). In view of the dismissal of plaintiff's federal claims at the pleading stage, the court declines to exercise supplemental jurisdiction over his state law claims for malicious prosecution and intentional infliction of emotional distress. *See Bunch v. Duncan*, No. 3-01-CV-0137-G, 2002 WL 324287 at *4 (N.D. Tex. Feb. 27, 2002) (declining to exercise supplemental jurisdiction over state law claims following dismissal of section 1983 claims on grounds of qualified immunity).

## CONCLUSION

Defendants' renewed Rule 12(b)(6) motion to dismiss [Doc. #23], which the court treats as a Rule 12(c) motion for judgment on the pleadings, is granted. The court will dismiss plaintiff's federal claims with prejudice and his state law claims without prejudice by separate judgment filed today.

SO ORDERED.

DATED: August 23, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE